```
     J81VVUCC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    MARASH VUCINAJ,

4                  Plaintiff,

5            v.                            18 CV 7606 (LGS)

6    CITY OF NEW YORK, NEW YORK
     CITY POLICE DEPARTMENT (NYPD),
7
                   Defendants.             PREMOTION CONFERENCE
8
     ------------------------------x
9                                          New York, N.Y.
                                           August 1, 2019
10                                         10:53 a.m.

11   Before:

12                     HON. LORNA G. SCHOFIELD,

13                                         District Judge

14                          APPEARANCES

15   WHITE NISAR & HILFERTY
          Attorneys for Plaintiff
16   BY:  JOSEPH C. ALBANESE

17   NEW YORK CITY LAW DEPARTMENT
          Attorneys for Plaintiff
18   BY:  AMANDA BLAIR

19

20

21

22

23

24

25
```

1         (Case called)

2         MR. ALBANESE:  Counsel for plaintiff, Joseph
3 Christopher Albanese.

4         THE COURT:  Good morning.

5         MS. BLAIR:  Amanda Blair, for the City of New York.

6         THE COURT:  Good morning.  You may be seated.

7         We're here for a premotion conference on defendants'
8 proposed motion for summary judgment.  And at this point, could
9 someone just give me a summary of what discovery was conducted?

10        MR. ALBANESE:  Mr. Vucinaj was obviously deposed.  And
11 then there was exchange of document discovery.  We've turned
12 over whatever was in Mr. Vucinaj's possession in accordance
13 with the request.  And we received documentation from the city.

14        THE COURT:  Okay.

15        Were there any depositions of defendant or its
16 representatives?

17        MR. ALBANESE:  No, there were not.  One of the letters
18 we put in requesting the one deposition beyond the 17th, which
19 was denied, which at this point we are going to request a
20 reconsideration, given the situation and our late appearance in
21 this matter.

22        THE COURT:  Okay.  Why don't you run through those
23 facts for me one more time, specifically the dates; when you
24 appeared, when the discovery cutoff date was, what you did
25 between when you appeared and the discovery cutoff date.

1          MR. ALBANESE:  My memory might be a little bit fuzzy,
2  your Honor.  But I believe the discovery cutoff date was July
3  17th.  We appeared in late May.  I could look in my file.
4          THE COURT:  Okay.
5          MR. ALBANESE:  And at that time we requested a slight
6  stay of discovery -- let me rephrase that.  Back up a second.
7          We appeared just ten days or seven days before
8  discovery was supposed to be cut off.  In our notice of
9  appearance, we requested an adjournment of time for two months
10  to gather facts, three months, you limited to a month.
11          THE COURT:  So I extended discovery.
12          MR. ALBANESE:  You extended the discovery one month.
13  We had asked for a little more time, but you said one month was
14  fine.
15          We scheduled Mr. Vucinaj's deposition for July 1st.
16  During discussions -- now, again, we had verbal discussions
17  with opposing counsel about us taking two depositions.  One of
18  them was Deputy Commissioner Tucker.  Now, again, opposing
19  counsel disputes the discussion.  I believe it's just a memory
20  issue, because at one point I didn't remember who we had
21  requested for the deposition.
22          THE COURT:  And what's the role of the deputy
23  commissioner in the case?
24          MR. ALBANESE:  We believe he is in charge of the
25  promotions.  So we were looking to take his deposition with

1  regards to -- Mr. Vucinaj's main allegation is that as a white
2  Albanian, he is discriminated against as opposed to Italian and
3  Irish males.
4            THE COURT:  And you think the deputy commissioner
5  directly made the decision concerning his promotions or lack of
6  promotions?
7            MR. ALBANESE:  Well, we believe in part he would have
8  more of the statistical analysis of who has been promoted, why
9  they've been promoted, compare them to Mr. Vucinaj's resume,
10 and --
11           THE COURT:  Okay.  Did you try to schedule -- did you
12 notice his deposition during the period when discovery was
13 open?
14           MR. ALBANESE:  We did not formally notice it in
15 writing because, based upon the conversations I had with
16 opposing counsel, we believed it was amenable.  And then on the
17 Friday before the close of discovery, I put the name in
18 writing.  On the Monday before the close of discovery, they
19 objected and opposed.
20           One of our concerns is that if we had the wrong
21 individual as to who would be reviewing the promotions or -- we
22 would gladly to accept somebody else.  We just seek to depose
23 somebody for two to three hours, perhaps no more than four,
24 with regards to the very nature of the promotions of the
25 individuals, especially Mr. Vucinaj has put in the complaint

|   |   |
|---|---|
| 1 | various -- what he believes is Irish and Italian individuals |
| 2 | who had been promoted over him over the course of the nine, ten |
| 3 | years he's been a captain.  He's not been promoted in any |
| 4 | capacity, but some of these people have been promoted five to |
| 5 | six times. |
| 6 |             THE COURT:  Okay.  Who was his direct supervisor? |
| 7 |             MR. ALBANESE:  He had various direct supervisors over |
| 8 | the course of his career as captain. |
| 9 |             THE COURT:  Okay.  And were there any comments or any |
| 10 | actions that provided some indicia that he was being |
| 11 | discriminated against because of his race and ethnicity and |
| 12 | national origin? |
| 13 |             MR. ALBANESE:  Yes, your Honor, there were several. |
| 14 |             One of them specifically was -- and I believe it's in |
| 15 | the complaint, but I don't remember the supervisor's name, made |
| 16 | a disparaging comment about him being an Albanian and how |
| 17 | Albanians never forget, clearly in reference to -- I hate to |
| 18 | say it this way, but there are ethnic Albanian blood feuds that |
| 19 | are very well-known in the city.  So it's in direct reference |
| 20 | to Mr. Vucinaj's -- |
| 21 |             THE COURT:  And what did he say about his being |
| 22 | Albanian? |
| 23 |             MR. ALBANESE:  How -- part of the -- part of the |
| 24 | comment was how ethnic -- how Albanians never forget.  And it |
| 25 | was just -- there was another disparaging comment made at the |

1    same time, I just don't remember what it was.

2            THE COURT:  Okay.  And you said you had wanted to take
3    two depositions.  Did you notice the other deposition?

4            MR. ALBANESE:  I did in an email to opposing counsel
5    on the same day.  It was a --

6            THE COURT:  Did you send a notice of deposition?

7            MR. ALBANESE:  No, your Honor.

8            THE COURT:  Okay.  So let me hear from defendant.

9            MS. BLAIR:  Yes, your Honor.

10           So I first would like to talk about Deputy
11   Commissioner Tucker and my alleged lack of memory.

12           During our conversations -- and we have spoke on the
13   phone, as we both are new to this case and trying to figure out
14   what's going on here -- the only person who was mentioned
15   during our conversations was Delatorre, who I then told the
16   NYPD --

17           THE COURT:  And who's that?

18           MS. BLAIR:  He is a -- I'm sorry, I forget his title,
19   but he was involved with supervising plaintiff in some
20   capacity.  He's related to the transfer to the Transit
21   position.

22           So I notified the NYPD that Delatorre might be a
23   person who would be deposed.  We had these conversations prior
24   to plaintiff's deposition July 1st.  We had talked in June.

25           Tucker was not mentioned at that time.  I know he

wasn't mentioned, because when I got the email from plaintiff's counsel on Friday before the close of discovery, I believe, on that Wednesday, I didn't know who Tucker was. I was surprised to hear his name. And in my email I said, How is Tucker relevant to this case? He's a high official, high-ranking official as deputy commissioner.

Furthermore, Tucker is not relevant to Mr. Vucinaj's claims. Tucker is involved with the advancement process, which is a formal process of promotion that the NYPD created, since there's been issues with the discretionary process of being recommended by your supervisor, a process that Mr. Vucinaj admitted during his deposition that he has not utilized until he filed his complaint.

So anything that he was going to ask Deputy Commissioner Tucker is, one, not relevant, because he didn't apply, so Tucker didn't review his application until maybe most recently, because he recently did apply; and basically fishing for information, because he has had this vendetta against NYPD for some time.

I also wanted to address the comment that allegedly was made about Mr. Vucinaj and his memory.

During the deposition -- it was not in his amended complaint or complaint, as they are both very bare bones -- he mentioned that some supervisor, possibly a captain in a precinct, had said something about him having a good memory

1    because he's Albanian.  That comment, I believe, was in 2013,
2    is therefore time-barred and has nothing to do with the
3    discretionary promotion process related to his timely claims.
4         So with regards to the depositions, I want to advance,
5    as I did in my letter, that at all times I've acted in good
6    faith.  I have asked plaintiff's counsel what witnesses he
7    wanted to produce formally.  I can't just hold people's time
8    and expect them to be able to appear, especially when they are
9    such high-ranking officials.  And it was not until the Friday
10   before the close of discovery that he gave me those dates.  I
11   went back to my client, it didn't work out, he filed his
12   letter, I responded.
13        THE COURT:  Okay.  And I presume you interviewed the
14   person who was involved in the transfer to the Transit
15   position, Delatorre was his name?
16        MS. BLAIR:  So I believe there's -- Delatorre is on an
17   email.  So as some background, plaintiff has twice filed for a
18   service retirement prior to his most recent transfer to
19   Transit, which he claims is retaliation.  He had filed for
20   service retirement.  He admitted in his deposition a position
21   at the precinct that he was in prior to his filing was no
22   longer open; he was placed in Transit.
23        And so we had produced some discovery and email that
24   Delatorre is attached, there's a number of people on it,
25   involved with his transfer to that position, his assignment to

1    the role he has now, and now it's become a permanent
2    assignment.
3              So I would have asked someone who was involved in that
4    process; I might ask in an affidavit for a summary judgment
5    motion.
6              THE COURT:  Okay.
7              All right.  Let's do this:  Let's set a schedule for
8    the -- I'm not going to reopen discovery, but what I will do is
9    let's set a schedule for the summary judgment motion.
10             When would you like to file your motion?
11             MS. BLAIR:  Your Honor, can I please ask for 45 days?
12   I just have a lot of motions due.
13             THE COURT:  We can.  What I was thinking about though
14   is I will allow -- okay.  Let's set the schedule for 45 days.
15   Today is the 1st, that should make it easy.  We'll do it in the
16   middle of September.  How about, I don't know if this is
17   exactly 45, but how about September 12?
18             MS. BLAIR:  Thank you, your Honor.
19             THE COURT:  Okay.  And then how long to respond?
20             MR. ALBANESE:  Your Honor, I'm just looking at my
21   calendar, because between the Jewish holidays and the family
22   vacation, I apologize.  I guess September 4th.
23             THE COURT:  Her motion is due September 12th.
24             MR. ALBANESE:  I'm sorry, I'm looking at October 4th.
25             THE COURT:  Oh, okay.  How about October 3rd?

1           MR. ALBANESE:  Okay.
2           THE COURT:  All right.  So October 3rd.
3           And then let's have a reply on October 15th.
4           And I will allow a three-hour deposition of
5   Mr. Delatorre or somebody with knowledge of the plaintiff's
6   transfer to the Transit position.  And if you could try and get
7   that done sooner than later so you all know what it is in
8   advance of the motion.
9           MR. ALBANESE:  One other thing, if we may, your Honor.
10          THE COURT:  Yes.
11          MR. ALBANESE:  We were going to request withdrawal of
12  the retaliation claims at this particular point in time.
13  That's one of the things we tried to amend the complaint to
14  make sure they were pled a little differently and properly.
15          THE COURT:  Sure.
16          MR. ALBANESE:  That being said, we'd like to withdraw
17  those and Mr. Delatorre would be more relevant to the
18  retaliation claims.
19          THE COURT:  Okay.
20          MR. ALBANESE:  We'd be happy to depose anyone that
21  defendant --
22          THE COURT:  No, no, no.  Why depose someone if it's no
23  longer relevant to a claim?
24          MR. ALBANESE:  Well, Delatorre would not be, but one
25  of the main aspects is the discretionary -- the claim about

1   discretionary promotions.
2           Now, Mr. Tucker, as defense says, is the wrong
3   individual because he's --
4           THE COURT:  So you're sort of asking for a 30(b)(6)
5   motion.
6           MR. ALBANESE:  Yes, your Honor.
7           THE COURT:  Essentially a corporate representative who
8   can talk about a particular subject.  And the subject is?
9           MR. ALBANESE:  Discretionary promotions within the
10  police department, which is what the claim is.  And again, we
11  thought it was Mr. Tucker.  Clearly we had that wrong, so
12  that's why we --
13          THE COURT:  I'm not sure about that, so let me hear
14  from the defendant.
15          MS. BLAIR:  Your Honor, I understand what plaintiff's
16  counsel is asking.  Basically, because the discretionary
17  promotion process is amorphous in the NYPD --
18          THE COURT:  Is what?
19          MS. BLAIR:  Amorphous; it's not very settled.  That's
20  why they created the advancement process.
21          Mr. Vucinaj's claim is primarily, prior to the
22  advancement process, not receiving discretionary promotions.
23          Defendants advance that his timely claims, this
24  process has been in effect and he has not used it.
25  Otherwise --

1            THE COURT:  Wait.  I thought he had just applied.
2            MS. BLAIR:  He did, yes, recently, I think as of this
3    year, he did apply.
4            THE COURT:  Okay.
5            MS. BLAIR:  So if there are any claims that are
6    related to this year, then I would ask the Court for any
7    guidance as to how you want us to --
8            THE COURT:  I don't think he's talking about claims
9    related to this year.
10           MS. BLAIR:  Okay.
11           THE COURT:  And what about the period prior to when
12   this program was in place?
13           MS. BLAIR:  So it was discretionary.  So your
14   supervisor, someone else within the precinct, someone else
15   within the NYPD, could recommend you based on your performance
16   for this discretionary promotion.  This is past the title of
17   captain.  Once you get past captain to deputy inspector, chief,
18   it becomes a discretionary process where you're recommended.
19   And then the police commissioner has a final authority to
20   promote you to that position.
21           So I believe that plaintiff is seeking a witness to be
22   able to testify to that specific process.
23           I have no problem with going back to the NYPD and
24   seeing if we can find a witness.  I just don't want to say on
25   the record that I will definitely be able to provide a 30(b)(6)

1     witness.
2              THE COURT:  Okay.  So you can have a three-hour
3     deposition of the 30(b)(6) witness, but you have to frame what
4     the question is and send a notice of deposition over there by,
5     let's say, a week from today.
6              In the meantime, Ms. Blair more or less understands
7     what you're looking for, but the scope of the deposition is
8     controlled by what's in the deposition notice.
9              MR. ALBANESE:  Thank you, your Honor.
10             THE COURT:  Okay?
11             All right.  Is there anything else we need to do?
12             MS. BLAIR:  No, your Honor.
13             THE COURT:  All right.  We're adjourned.  Thank you.
14             MS. BLAIR:  Thank you.
15             MR. ALBANESE:  Your Honor?  Just a quick question.
16             THE COURT:  Yes.
17             MR. ALBANESE:  Will we be permitted to withdraw the
18    retaliation claim?
19             THE COURT:  Oh, yes.  Absolutely.
20             So what you should do is you've said on the record now
21    that you're withdrawing the retaliation claim.  When the motion
22    for summary judgment gets filed, I presume that Ms. Blair will
23    say, Plaintiff dropped the retaliation claim.  If she doesn't
24    in your papers, you can say that.  But I'm sure she would
25    rather not brief something that is no longer on the table.

J81VVUCC

1              MR. ALBANESE:  Agreed.

2              THE COURT:  Okay.

3              MR. ALBANESE:  Thank you, your Honor.

4              THE COURT:  Thank you.

5                          *   *   *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25