UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                         :

MARASH VUCINAJ,                      :

                    Plaintiff,     :

                                      :             18 Civ. 7606 (LGS)

           -against-           :

                                       :          **OPINION AND ORDER**

NEW YORK CITY POLICE DEPARTMENT   :
and CITY OF NEW YORK,                  :

                                       :

                     Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

       Plaintiff Marash Vucinaj brings this action against Defendants New York City Police

Department (the "NYPD") and the City of New York (the "City") alleging employment

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §

1981, New York State Human Rights Law ("NYSHRL"), New York Executive Law §§ 290 et

seq., and New York City Human Rights Law ("NYCHRL"), New York City Administrative Code

§§ 8-101 et seq.  Defendants move for summary judgment on all claims.  For the following

reasons, summary judgment is granted in part and denied in part to Defendants.

## I.     BACKGROUND

       Unless otherwise noted, the facts below are drawn from the record and are undisputed.[1]

---

[1] In opposition to summary judgment, Plaintiff filed a "Rule 56.1 Statement of Undisputed
Material Facts in Opposition To Defendants Motion for Summary Judgment."  While this
submission contains certain facts, it does not -- as is required by Local Rules -- "include a
correspondingly numbered paragraph responding to each numbered paragraph [from Defendants'
Rule 56.1 Statement of Undisputed Material Facts]."  S.D.N.Y. Local Civ. R. 56.1(b).
Accordingly, the facts stated in Defendants' Rule 56.1 Statement are deemed admitted.  *See
Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails
to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be
deemed admitted.").

A.      **February 1994 to January 2014**

Plaintiff, an individual who identifies as a white male of Albanian ethnicity and national origin, was appointed to the NYPD as a police officer on February 28, 1994.  Between 1994 and 2009, Plaintiff was assigned to several different precincts within New York City in various roles, including Sergeant and Lieutenant, and spent three years at Interpol in Lyon, France as part of an overseas liaison program for the NYPD Intelligence Division.

On December 23, 2009, Plaintiff was promoted to the rank of Captain and was assigned to Patrol Borough Bronx in January 2010.  A Captain position is considered an "executive" position within the NYPD.  The order of increasing rank of executives is Captain, Deputy Inspector, Deputy Chief, Assistant Chief and Chief.  On March 25, 2010, Plaintiff was designated Executive Officer of the 42nd Precinct.  Executive Officer is the second highest position within a precinct chain of command, behind the Commanding Officer.

Between January 20, 2012, and May 21, 2012, Plaintiff was temporarily assigned to the NYPD Personnel Bureau as a subject matter expert for the New York City Department of Citywide Administrative Services ("DCAS") promotional exam for the Captain rank.  Sometime between 2012 and 2015, Plaintiff became aware of "Rising Star Promotions," a public website run by (at the time) two active members of the NYPD that offers products to help candidates prepare for promotional exams, is primarily used by members of the NYPD and is not officially affiliated with the agency (the "Website").

On June 14, 2012, Plaintiff was assigned to the 44th Precinct as Executive Officer, and then, on July 20, 2012, to the Patrol Borough Bronx Incident Response Team ("IRT") as Commanding Officer for the unit.  Plaintiff remained Commanding Officer of the IRT until he

filed for service retirement in September 2012, and was designated to "terminal leave" duty status from October 1, 2012, until January 9, 2014.

Between 2010 and 2014, Plaintiff reported to Inspector Kevin Harrington of Patrol Borough Bronx. Plaintiff testified that at some point during this period Mr. Harrington called Plaintiff into his office and asked if he would like to have his own command. After Plaintiff expressed interest, Mr. Harrington stated that Plaintiff "needed to start playing the game." Plaintiff understood this to mean that he needed to begin manipulating crime statistics. Between 2010 and 2014, Plaintiff stated that he observed NYPD employees engaging in crime statistics manipulation, which he reported to the NYPD Internal Affairs Bureau ("IAB") in 2014. According to Plaintiff, he filed for service retirement in September 2012, in part, because he was subject to retaliation and a hostile work environment, such as having his decisions related to requests for time off (made as executive officer of the IRT) undermined by Mr. Harrington.

## B.      January 2014 to November 2016

In January 2014, Plaintiff withdrew his pending service retirement application and returned to the 42nd Precinct as Executive Officer where he stayed, aside from one week in the 52nd Precinct, until June 10, 2014. Plaintiff testified that he suffered a hostile work environment while at the 42nd Precinct because of his race and/or national origin, either when he worked there before he filed for service retirement in September 2012 or sometime between January and June 2014. For example, Assistant Chief Gomez, then Commanding Officer at Patrol Borough Bronx, allegedly stated (on an unspecified date) "oh, we heard you Albanians don't forget anything," in the presence of the Deputy Chief McCarthy. Plaintiff did not report the comment. Plaintiff also testified that Gomez interfered with Plaintiff's ability to advance within the NYPD because, on another unspecified date, Gomez told Plaintiff he was "not even number three or

number four in line to get a command."  As a result, Plaintiff did not express a desire to be

promoted between 2012 and 2018 because he believed that he did not have the opportunity.[2]

      In June 2014, Plaintiff was transferred to the 47th Precinct and remained there until

October 2014.   According to Plaintiff, this transfer occurred because he had reported

"corruption" at the 42nd Precinct by, for example, submitting complaints to the IAB about

manipulation of crime statistics.

      On October 14, 2014, Plaintiff was assigned to Patrol Borough Queens South as

Midnight Duty Captain, where he remained until December 14, 2014.  At the time, Plaintiff

sought assistance from his union representative to be moved off this assignment.  Plaintiff

testified that he was unable to apply for a command position during this time because of his

attempt to make this change.

      In December 2014, Plaintiff was temporarily assigned back to the Personnel Bureau to

work on the DCAS promotional exam for the Lieutenant rank.  After completing this assignment,

Plaintiff was reassigned to the Midnight Duty Captain position on April 18, 2015.

      On April 24, 2015, Plaintiff contacted the NYPD Equal Employment Opportunity

("EEO") office to report "inappropriate remarks" posted on the Website's public discussion

forum, including profanity and a remark mimicking an Asian accent.  Plaintiff stated that he was

"offended by the remarks because they were unprofessional and written by supervisors within

the Department," and that the remarks "reinforce[d] and exacerbate[d]" his claims of retaliation

---

[2] Plaintiff testimony -- stating that he did not apply for promotions because he thought he did not
have the opportunity to do so -- arose in response to line of questioning that included the 2012 to
2019 timeframe.  However, because Plaintiff applied to the Deputy Inspector position in
November 2018, the period when Plaintiff did not express a desire to be promoted is more
accurately characterized as 2012 to 2018.

and hostile work environment.  Plaintiff also reported the following "inappropriate remarks" posted on the Website around 2011 when he was working as a subject matter expert for the DCAS Captain exam: "Captain in charge of the test is ESL himself," "Finally . . . a test that will weed out all the Sgt's who don't know how to speak English" and "Biggest complainers of this test do not speak English well."  While the remarks were removed after review by the EEO investigator, the July 7, 2015, letter from the EEO stated that the investigation of Plaintiff's complaint did not rise to the level of employment discrimination under Title VII.

Plaintiff separately notified the IAB regarding an incident involving an unknown person who posted Plaintiff's full name on the Website message board while discussing an incident where Plaintiff issued a command discipline to a member of the service who had been shot, and also notified the Office of the Inspector General of an incident where a member of the review panel for the 2015 Lieutenant exam disclosed confidential information about the exam.

On March 25, 2016, Plaintiff was assigned to the 101st Precinct as Executive Officer, where he again filed for service retirement and was designated as terminal leave duty status from July 5, 2016, until November 17, 2016.  Plaintiff testified that he again retired because he experienced retaliation, a "general hostile work environment" and insubordination by his own officers.

C.    **November 2016 to the Present**

Plaintiff returned to active duty status on November 19, 2016, and was assigned to Transit Borough Brooklyn and designated the Executive Officer for Transit District 30.  Upon his return, Plaintiff "believe[d]" his prior position as executive officer of the 101st Precinct was filled, but stated that it was "unusual" to be assigned a position within the Transit Borough because he had never been assigned there previously in his career and believed that he was

5

transferred to Transit District 30 as a form of retaliation.

On January 12, 2018, Plaintiff contacted the EEO office to file a complaint against the NYPD and City officials because of his belief that the NYPD was discriminating against service members "who are not minority (Black, Hispanic, Asian), or female" by promoting members of service above the rank of Captain based on those characteristics. Plaintiff also reported alleged violations of the NYPD's social media policy based on additional content posted on the Website, where, according to Plaintiff, words like "douchebag or mega prick" were used to describe him because he had previously made EEO and IAB complaints. Plaintiff submitted documents requested by the EEO office but did not appear for an in-person interview because he felt uncomfortable.

In a letter dated March 27, 2018, the EEO notified Plaintiff that the review of his employment discrimination allegations was complete and corrective action had been taken regarding comments posted to the Website. However, because of unresolved disciplinary charges and specifications pending against Plaintiff, the rest of the complaint remained under the jurisdiction of the Deputy Commissioner. During his July 2019 deposition, Plaintiff testified that there were additional comments posted on the Website, including a comment posted as recently as 2018 stating "so it's okay to hate all Albanians," with an Albanian flag, allegedly directed at him.

On April 10, 2018, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC charge") alleging that Plaintiff was subjected to sex, race and national origin discrimination from January 1, 2017, until the date of the charge by being denied a Commanding Officer assignment while other unspecified individuals with lower qualifications and less seniority received assignments due to their sex,

race and national origin.

In November 2018, Plaintiff applied for a promotion to Deputy Inspector.  He testified that, at some point after submitting his application, he received a series of three e-mails from First Deputy Commissioner Benjamin Tucker indicating, in sum, that he had not been selected for the position.  As of the date of his deposition, Plaintiff was assigned to the Transit Borough Liaison Unit in an Executive Liaison role.

### D.     Procedural History

Plaintiff commenced the instant action pro se on August 21, 2018.  On January 15, 2019, Plaintiff filed an Amended Complaint that broadly alleges that, due to a "political agenda" of "equality and inclusion," the NYPD promotes applicants based on their national origin (Irish or Italian), race (Black, Asian or Hispanic), color (unspecified), gender (female) and/or religion (unspecified).  Specifically, the Amended Complaint alleges that between 2016 and 2019, the NYPD promoted approximately 100 individuals to a variety of executive positions who were less qualified than Plaintiff, including some with worse disciplinary records than Plaintiff.  Plaintiff's counsel appeared in June 2019 prior to Plaintiff's deposition and the filing of this motion.

## II.     LEGAL STANDARD

Summary judgment is appropriate if the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The moving party "bears the burden of 'demonstrat[ing] the

absence of a genuine issue of material fact.'" *Id.* at 114 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (alteration in original).  The evidence is construed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in favor of the nonmoving party.  *Id.* at 113.  "Summary judgment should be denied where there are genuine issues of material fact 'that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quoting *Anderson*, 477 U.S. at 250).

## III.    DISCUSSION

Construed broadly, Plaintiff brings failure to promote and hostile work environment claims under Title VII, § 1981, NYSHRL and NYCHRL based on his race, color, sex, national origin and/or religion, and a claim based on denial of overtime work opportunities.[3]  For the following reasons, summary judgment is granted in part and denied in part.

### A.    NYPD Claims and § 1981 Claims

As a threshold matter, summary judgment is granted to the NYPD on all claims because it is not a suable entity.  The City, which is already a Defendant, is the proper suable entity for claims involving the NYPD.  *See* N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law."); *accord Holmes v. City of New York*, No. 19 Civ. 1628, 2020 WL 918611, at *14 (S.D.N.Y. Feb. 26, 2020).

---

[3] At a pre-motion conference on August 1, 2019, Plaintiff stated that he intended to withdraw his retaliation claims, and he confirmed that withdrawal in his Rule 56.1 statement in opposition to Defendants' motion.  Accordingly, this Opinion does not consider any retaliation claims.

Summary judgment is also granted to Defendants on Plaintiff's § 1981 claims because "§ 1981 does not provide a separate private right of action against state actors," and Plaintiff does not allege he is bringing his § 1981 claims under 42 U.S.C. § 1983.[4]  *Duplan v. City of New York*, 888 F.3d 612, 621 (2d Cir. 2018) (dismissing plaintiff's § 1981 claims against New York City); *accord Adams-Flores v. City of New York*, No. 18 Civ. 12150, 2020 WL 996421, at *3 (S.D.N.Y. Mar. 2, 2020) (concluding the same).

### B.    Failure to Promote Claims – Title VII and NYSHRL

Defendants argue that Plaintiff's failure to promote claims under Title VII and the NYSHRL fail because Plaintiff has not established a prima facie case of race, color, sex, national origin and/or religious discrimination, and has not offered sufficient evidence of discriminatory intent.  For the following reasons, summary judgment is granted to Defendants on these claims.

### 1.    Statute of Limitations

"Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act."  *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010); *accord Mercedes v. Dep't of Educ. of City of New York*, No. 16 Civ. 3284, 2018 WL 4682015, at *7 (S.D.N.Y. Sept. 28, 2018); *see* 42 U.S.C. § 2000e-

---

[4] Even if Plaintiff's pro se Amended Complaint were construed to allege a § 1983 claim against the City for adopting a discriminatory policy for awarding promotions to senior NYPD positions, the claim would fail because Plaintiff has not shown, as discussed below, that the failure to promote him was discriminatory and unconstitutional.  Without an underlying constitutional violation, there is no viable *Monell* claim.  *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007) ("[T]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." (alteration in original)); *accord Nunez v. New York City Hous. Auth.*, No. 18 Civ. 2369, 2020 WL 1903999, at *5 (S.D.N.Y. Apr. 17, 2020); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).

5(e)(1). "When . . . a plaintiff's allegations of discrimination extend beyond the 300-day limitations period, the nature of the claim determines what consideration will be given to the earlier conduct." *McGullam*, 609 F.3d at 75; *accord Mercedes*, 2018 WL 4682015, at *7. For Title VII claims based on "termination, failure to promote, denial of transfer, or refusal to hire," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002), Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period," *id*. at 105, "even if other acts of discrimination occurred within the statutory time period." *McGullam*, 609 F.3d at 75; *accord Mercedes*, 2018 WL 4682015, at *7. Plaintiff filed his EEOC charge on April 10, 2018. Accordingly, the Title VII claim is limited to instances of failure to promote on or after June 14, 2017. *See Toussaint v. City of New York et al.*, No. 19 Civ. 1239, 2020 WL 3978317, at *3 (S.D.N.Y. June 29, 2020) ("Plaintiff's claim that he was not promoted at certain points during his career . . . are discrete acts, and any such allegations occurring outside of the 300-day statute of limitations are not considered timely under Title VII.").

Plaintiff's NYSHRL claim is subject to a three-year statute of limitations, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007), which is tolled while Plaintiff's EEOC complaint was pending. *Taylor v. City of New York*, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016); *Esposito v. Deutsche Bank AG*, No. 07 Civ. 6722, 2008 WL 5233590, at *5 (S.D.N.Y. Dec. 16, 2008) (collecting cases). Accordingly, Plaintiff's NYSHRL claim is time-barred to the extent it is based on conduct occurring before April 10, 2015.

## 2.     Failure to Promote Claim Legal Standard

The failure to promote an employee can be the basis for a discrimination claim under Title VII and the NYSHRL. *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002); *accord Smith v. New York & Presbyterian Hosp.*, No. 18 Civ. 776, 2020 WL 777786, at *15 n.18

(S.D.N.Y. Feb. 18, 2020).  Employment discrimination claims under the NYSHRL based on

failure to promote are subject to the same standards as Title VII.  *Vivenzio v. City of Syracuse*,

611 F.3d 98, 106 (2d Cir. 2010); *accord Sanderson v. Leg Apparel LLC*, No. 19 Civ. 08423,

2020 WL 3100256, at *7 (S.D.N.Y. June 11, 2020).

  To survive summary judgment, a plaintiff must first make a prima facie showing that:

"(1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which

the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position

remained open and the employer continued to seek applicants having the plaintiff's

qualifications."  *Aulicino v. New York City Dep't of Homeless Servs.*, 580 F.3d 73, 80 (2d Cir.

2009); *accord Ariz v. Metro. Transportation Auth.*, No. 17 Civ. 4491, 2019 WL 2613476, at *3

(S.D.N.Y. June 6, 2019); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  "In

all cases, for the plaintiff to avoid an adverse judgment, there must be proof that the plaintiff was

'rejected under circumstances which give rise to an inference of unlawful discrimination.'"

*Aulicino*, 580 F.3d at 80 (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.

1998)); *accord Ariz*, 2019 WL 2613476, at *3; *see Littlejohn v. City of New York*, 795 F.3d 297,

307 (2d Cir. 2015) (To establish a prima facie case of discrimination, a plaintiff must present

"some minimal evidence suggesting an inference that the employer acted with discriminatory

motivation.").

  If a plaintiff carries his prima facie burden, "the burden shifts to the defendant, which is

required to offer a legitimate, non-discriminatory rationale for its actions."  *Aulicino*, 580 F.3d at

80; *accord Ariz*, 2019 WL 2613476, at *3.  This burden is "not a demanding one."  *Bickerstaff v.

Vassar Coll.*, 196 F.3d 435, 446 (2d Cir. 1999); *accord Gold v. Titlevest Agency LLC*, No. 18

Civ. 935, 2020 WL 2835570, at *3 (S.D.N.Y. June 1, 2020).  If the defendant offers evidence of

a non-discriminatory reason that the plaintiff did not get the promotion, the burden shifts back to the plaintiff to "show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Aulicino*, 580 F.3d at 80; *accord Ariz*, 2019 WL 2613476, at *3.

### 3. Failure to Promote – 2018 Inspector General Application

The Complaint alleges that, because of unlawful discrimination, Plaintiff was denied a promotion to the position of Deputy Inspector, which he applied for in 2018.[5] Summary judgment is granted to Defendants because the evidence is insufficient for a reasonable jury to find that the decision not to promote Plaintiff "was more likely than not based in whole or in part on discrimination" based on race, color, sex, national origin and/or religion. *Aulicino*, 580 F.3d at 80; *accord Marquit v. Mylan Specialty, L.P.*, No. 18 Civ. 00647, 2020 WL 1228635, at *2 (S.D.N.Y. Mar. 13, 2020).

For purposes of this analysis, it is assumed that Plaintiff has made a prima facie case showing discriminatory failure to promote. It is undisputed that -- as a white male of Albanian ethnicity and national origin -- he is a member of a protected class; that, in 2018, he applied for the position of Deputy Inspector and was ultimately not hired; and that the position remained open and Defendants continued to seek applicants having Plaintiff's qualifications.

---

[5] The generalized failure to promote Plaintiff to positions for which he did not apply does not give rise to a viable Title VII or NYSHRL claim in this case. To be excused from the requirement that the plaintiff applied for promotion to a specific job, "an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 n.2 (2d Cir. 1998)); *accord Bussa v. St. John's Univ.*, No. 18 Civ. 4623, 2019 WL 136641, at *3 (E.D.N.Y. Jan. 8, 2019). Plaintiff has not identified evidence in the record that meets these requirements.

Discriminatory intent is assumed for purposes of this first stage of the *McDonnel Douglas* analysis as it is discussed in detail below.

Defendants have satisfied their burden at the second stage of the *McDonnell Douglas* analysis. They proffered a legitimate, non-discriminatory reason for denying Plaintiff the promotion to Deputy Inspector through evidence that Plaintiff did not receive a recommendation from his Bureau Head after his application was submitted and reviewed, and that receiving a "[r]ecommendation for promotion by [a Bureau Head] . . . is an accurate gauge of who will be considered for promotion within the calendar year." Defendants also offered evidence that, while not determinative, a candidate's disciplinary history is a factor in the promotion process and that Plaintiff did not have a spotless disciplinary history.[6] *See Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) ("The employer need not *persuade* the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior.").

Summary judgment is granted to Defendants at the final stage of the *McDonnell Douglas* analysis. Plaintiff has not provided sufficient evidence from which a reasonable jury could conclude that Defendants' decision not to offer him the Deputy Inspector position was motivated in whole or in part by discrimination. Plaintiff provides the following evidence of Defendants' discriminatory intent: two documents -- titled "Deputy Inspector and Above Ancestry" and

---

[6] In a letter sent to the First Deputy Commissioner, dated July 28, 2017, the Special Investigations Unit of IAB requested charges and specifications against Plaintiff for his failure to notify the IAB of allegations of corruption or serious misconduct involving other members of the service and computer misuse related to Plaintiff's use of the NYPD OMNIFORM computer system to view arrest reports outside his designated patrol borough. On April 12 and 13, 2017, Plaintiff was interviewed by IAB concerning these incidents, and admitted that he did not immediately report certain allegations and that he used the OMNIFORM system to make queries outside his designated patrol borough.

"Deputy Inspector Promotion – 2010 to Present" -- to support the proposition that he was discriminated against on account of his race and national origin; his testimony regarding an anti-Albanian comment made by Assistant Chief Gomez either before Plaintiff filed for service retirement in September 2012 or sometime between January and June 2014; Plaintiff's testimony and EEO documents regarding a 2015 EEO complaint about Website comments by unidentified "supervisors within the Department," including profanity and a remark mimicking an Asian accent, and unidentified Website comments in 2011 allegedly directed at Plaintiff and his ability to speak English; a 2018 EEO complaint which references unidentified 2018 Website comments describing Plaintiff as a "douchebag or mega prick"; and his testimony regarding unidentified 2018 Website comments stating "so it's okay to hate all Albanians," with an Albanian flag.[7]

Considering this evidence together, Plaintiff does not cite evidence from which a reasonable jury could conclude that the individuals responsible for denying him the promotion to Deputy Inspector did so on account of his race, color, sex, national origin and/or religion. First,

_____

[7] The Amended Complaint individually describes 103 unnamed candidates who were promoted between January 2017 and January 2019 to a variety of senior NYPD positions and alleges that 95.2% of these discretionary promotions to Commanding Officer or other titles/assignments went to "ethnic Irish or Italian, Black, Hispanic, Asian or Female" candidates.  The Amended Complaint also contains alleged statistics specific to promotions in 2016 through 2018 showing that most of the promotions went to the same categories of candidates, in contrast to the allegedly many fewer promotions that went to "Male/White/Other [ethnicity] candidates."  As Plaintiff does not identify any evidence supporting these allegations, they are not considered on this motion.  *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir 2000) ("When the motion is made, we go beyond the paper allegations of the pleadings. . . . [U]nsupported allegations do not create a material issue of fact.");  *Henek v. CSC Holdings, LLC*, No. 18 Civ. 6888, 2020 WL 1516460, at *1 n.2 (E.D.N.Y. Mar. 30, 2020) ("The complaint, of course, is not evidence with which a party can oppose a motion for summary judgment." (collecting cases)).  Even accepting these allegations as evidence, they do not give rise to an inference of discriminatory intent because the record does not show that Plaintiff and the individuals who were promoted are proper comparators, i.e., does not show they are "similarly situated in all material respects."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

the two documents concerning Deputy Inspector promotions show that these promotions have overwhelmingly gone to white male candidates, including in the year Plaintiff applied.  To the extent that Plaintiff relies on increased promotion of minorities over the years to show that Defendants adopted a "policy" to favor the promotion of racial minorities over white individuals, the evidence is unhelpful because the Amended Complaint does not include a *Monell* claim against the City alleging a discriminatory policy.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  The documents are similarly unhelpful to prove Plaintiff's discrimination claim, even though the "Deputy Inspector and Above Ancestry" document suggests that no other Albanians have been promoted to Deputy Inspector when "there are other Albanians in the NYPD and some with similar seniority."  The documents show that only 26 of the 337 members promoted to the rank of Deputy Inspector and above between 2010 and 2019 self-reported their national origin, and no evidence shows how many (if any) qualified Albanians sought promotion.

With respect to the comment allegedly made by Assistant Chief Gomez in 2012 or 2014, it is too temporally removed to be considered as evidence of discriminatory intent in 2018, as are the unidentified Website comments in 2011 regarding Plaintiff's ability to speak English.  *See Johnson v. City of New York*, No. 18 Civ. 9600, 2020 WL 2036708, at *4 (S.D.N.Y. Apr. 28, 2020) ("The Second Circuit has long held that 'stray remarks' that are temporally removed from the adverse employment action at issue cannot, without more, meet even a '*de minimis* burden of raising an inference of discriminatory intent.'" (quoting *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001))); *Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 110 (2d Cir. 2011) (summary order) ("[S]tray comments [by a co-worker who played no role in an

adverse action] . . . do not create an inference of discrimination." (citing *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998))).

The anti-Albanian comment allegedly posted in 2018 is the only comment sufficiently near in time to Plaintiff's 2018 promotion application to be probative of discriminatory intent. However, Plaintiff has not shown a connection between this comment (or any of the other circumstantial evidence) and anyone who ultimately made the decision not to offer him the Deputy Inspector position, including the Police Commissioner, who has ultimately sole discretion over promotional decisions, or his Bureau Head, who declined to write him a recommendation.  *See Meyer v. State of New York Office of Mental Health*, 174 F. Supp. 3d 673, 692-95 (E.D.N.Y. 2016) (granting summary judgment to defendants on plaintiff's gender-based and religious Title VII discrimination claims, where plaintiff failed to identify evidence "that would permit a rational factfinder to infer that [d]efendants' failure to hire [p]laintiff was, in any way, the result of . . . discrimination"), *aff'd sub nom.*, 679 F. App'x 89 (2d Cir. 2017).

In sum, Plaintiff has also not identified evidence from which a reasonable jury could conclude that Defendant's failure to promote Plaintiff to the position of Inspector General in 2018 was prompted at least in part by discriminatory animus.  Summary judgment is therefore granted to Defendants on the Title VII and NYSHRL failure to promote claims.

### C.    Hostile Work Environment Claim

Plaintiff separately asserts hostile work environment claims under Title VII, NYSHRL and NYCHRL.  For the following reasons, summary judgment is granted to Defendants.

"A plaintiff must show not only that []he subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive."  *Duplan*, 888 F.3d at 627 (alteration in original); *see Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) ("Hostile

16

work environment claims under Title VII and the NYSHRL are governed by the same

standard.").  "As a general rule, incidents must be more than episodic; they must be sufficiently

continuous and concerted in order to be deemed pervasive.  Isolated acts, unless very serious, do

not meet the threshold of severity or pervasiveness." *Tolbert*, 790 F.3d at 439 (internal quotation

marks omitted).  "When harassment is perpetrated by the plaintiff's coworkers, an employer will

be liable if the plaintiff demonstrates that the employer either provided no reasonable avenue for

complaint or knew of the harassment but did nothing about it." *Rojas v. Roman Catholic

Diocese of Rochester*, 660 F.3d 98, 107 (2d Cir. 2011) (internal quotation marks omitted);

*accord Torres v. City of New York*, No. 18 Civ. 3644, 2019 WL 1765223, at *3 (S.D.N.Y. Apr.

22, 2019).

        With respect to the statute of limitations under Title VII, "[h]ostile environment claims

are different in kind from discrete acts [because they] . . . involve[] repeated conduct." *Morgan*,

536 U.S. at 115; *accord Mercedes*, 2018 WL 4682015, at *7.  "The unlawful employment

practice therefore cannot be said to occur on any particular day.  It occurs over a series of days or

perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be

actionable on its own." *Morgan*, 536 U.S. at 115 (internal quotation marks omitted); *accord

Mercedes*, 2018 WL 4682015, at *7.  Accordingly, "consideration of the entire scope of a hostile

work environment claim, including behavior alleged outside the statutory time period, is

permissible for the purposes of assessing liability, so long as an act contributing to that hostile

environment takes place within the statutory time period." *Morgan*, 536 U.S. at 105; *accord

Mercedes*, 2018 WL 4682015, at *7.

        Here, Plaintiff alleges a hostile work environment based on comments posted on the

Website in 2011 about his ability to speak English; the purported undermining of his decisions as

17

executive officer of the IRT by his supervisor Inspector Harrington in or around 2012; the comments made by Assistant Chief Gomez related to Plaintiff's Albanian national identity sometime either before or between January and June 2014; the additional comments posted on the Website[8] in 2015, including comments referencing racial stereotypes related to Asian accents; and additional anti-Albanian comments posted on the Website as recently as 2018, that were allegedly directed at Plaintiff.

Even though the majority of these alleged acts and statements occurred before June 14, 2017, at least one act -- comments posted on the Website in 2018 -- occurred within the 300-day statutory time period.  However, even if the Court were to apply the continuing violation doctrine and consider all acts and statements together, *see Mercedes*, 2018 WL 4682015, at *7, no reasonable fact finder could conclude that the acts and statements described above -- either in isolation or considered as a whole -- were sufficiently objectively severe or pervasive to establish a hostile work environment.

It is clear, based on Plaintiff's testimony, that he subjectively perceived the environment at the NYPD to be hostile during his tenure.  But the acts and statements Plaintiff describes, including comments related to his Albanian national identity, are insufficiently severe or pervasive to constitute an objectively hostile work environment, because they occurred only sporadically over a seven-year period, and, after review in 2015, an EEO investigator informed Plaintiff that the "offensive material was removed from the [W]ebsite," which Plaintiff confirmed during his deposition.  *See Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F.

---

[8] It is unclear whether the City can be held responsible for comments on the Website since it was owned and operated by two individual members of the NYPD.  However, because the EEO took corrective action with respect to comments that were posted there, it is assumed that the City had at least some authority to dictate the Website's content.

Supp. 3d 763, 782 (S.D.N.Y. 2019) (concluding the same where plaintiff alleged four incidents

where defendant used slurs and intimidating language related to plaintiff's race and national

origin, noting that the remarks were "offensive" and "seemingly and understandably engendered

offensive feelings," but "d[id] not meet the requisite standard for a Title VII claim"); *Morrison v.*

*United Parcel Serv., Inc.*, No. 17 Civ. 2885, 2019 WL 109401, at *3 (S.D.N.Y. Jan. 4, 2019)

("One or two isolated uses of racially insensitive language are rarely sufficient, but rather, the

plaintiff must demonstrate a 'steady barrage of opprobrious racial comments.'" (quoting *Tolbert*,

790 F.3d at 439)); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("[M]ere

utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would

not affect the conditions of employment to sufficiently significant degree to violate Title VII."

(internal quotation mark omitted)).  Because the analysis is the same, summary judgment is

granted to Defendants on the hostile work environment claims asserted under both Title VII and

the NYSHRL.  *See Lawrence v. Chemprene, Inc.*, No. 18 Civ. 2537, 2019 WL 5449844, at *10

(S.D.N.Y. Oct. 24, 2019) (concluding the same).

   Summary judgment is also granted to Defendants on Plaintiff's NYCHRL hostile work

environment claim because "the NYCHRL adopts a more rigorous standard than federal law to

impute liability to an employer," *Torres*, 2019 WL 1765223, at *5 (collecting cases), and

Plaintiff offers no evidence that the City "acquiesced" in any of the alleged discriminatory

comments made by NYPD employees directly to Plaintiff or on the Website.  *See* N.Y.C. Admin.

Code § 8-107(13)(b) (To be held liable under the NYCHRL for the discriminatory acts of non-

supervisory co-workers, an employer must "kn[o]w of the employee's or agent's discriminatory

conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective

action."); *accord Torres*, 2019 WL 1765223, at *5.

### D.    Denial of Overtime Discrimination Claim

Plaintiff also argues he has been denied overtime opportunities since 2017, while all other similarly situated Captains received overtime opportunities.  Summary judgment is granted to Defendants because Plaintiff has failed to make a prima facie case, the first necessary step under the *McDonnell Douglas* burden shifting analysis outlined above.

To establish a prima facie case of discrimination based on the denial of overtime, a plaintiff must still show "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent."  *In re New York City Dep't of Educ.*, No. 15 Civ. 7150, 2019 WL 1433163, at *6 (S.D.N.Y. Mar. 29, 2019) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802).  "A deprivation of the opportunity to earn overtime can be considered a materially adverse employment action."  *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 217 (E.D.N.Y. 2014) (collecting cases); *accord Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 419 (S.D.N.Y. 2018); *see Kaluczky v. City of White Plains*, 57 F.3d 202, 208 (2d Cir. 1995) ("Adverse employment actions include discharge, demotion, refusal to hire, refusal to promote, and reprimand." (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990)).

Plaintiff argues that, since his assignment to Transit Bureau Brooklyn, he has not been assigned overtime shifts.  However, Plaintiff proffers no evidence that discrimination on the basis of race, color, sex, national origin and/or religion played any part in his not being assigned overtime shifts.  Instead, he suggests that the motive was retaliation for his having reported "criminal activity being conducted and allowed by executive members of the NYPD as well as the Police Commissioner as well as the Mayor" concerning the falsification of criminal complaint

reports or the failure to report criminal incidents, and the theft and abuse of overtime. *See In re New York City Dep't of Educ.*, 2019 WL 1433163, at *7 (concluding that plaintiff had not made out a prima facie case of discrimination based on denial of overtime where plaintiff testified that the reason he received reduced overtime was "possibly in retaliation" for filing a lawsuit and union grievance, and "did not mention that race or national origin played a role in [his] reduced overtime"). Accordingly, summary judgment is granted to Defendants on the denial of overtime claim under Title VII, NYSHRL and NYCHRL. *See Mooney v. City of New York*, No. 18 Civ. 328, 2019 WL 4392961, at *5-6 (S.D.N.Y. Sept. 13, 2019) (granting summary judgment to defendants on plaintiff's Title VII, NYSHRL and NYCHRL claims based on denial of overtime because, even under the more lenient NYCHRL standard, there was "insufficient evidence for a reasonable jury to find that she was [denied overtime] . . . because of her sex").

### E.    Supplemental Jurisdiction

The Court declines to exercise supplemental jurisdiction with respect to Plaintiff's failure to promote claim under the NYCHRL because the federal claims have been eliminated before trial.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quotation mark omitted); *accord Wright v. Musanti*, 887 F.3d 577, 582 n.2 (2d Cir. 2018); *see Peddy v. L'Oreal USA, Inc.*, No. 18 Civ. 7499, 2020 WL 4003587, at *20 (S.D.N.Y. July 15, 2020) (concluding the same); *Espinoza v. New York City Dep't of Transportation*, 304 F. Supp. 3d 374, 391

(S.D.N.Y. 2018) ("Courts in this District routinely decline to exercise supplemental jurisdiction over a plaintiff's NYCHRL claims after dismissing all federal claims." (collecting cases)).

## IV.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgement is GRANTED except as to the NYCHRL failure to promote claim, over which the Court declines to exercise supplemental jurisdiction and which is dismissed without prejudice to refiling in state court.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 62 and 64, enter judgment for Defendants and close this case.

Dated: August 12, 2020
       New York, NY


**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**